IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 15-180-07 |
| | : | |
| HASAN CHANEY, | : | |
| a/k/a "Has," | : | |
| a/k/a "Big Has," | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant Hasan Chaney has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the judgment in this case. His motion is almost entirely conclusory, and without merit. It should be summarily denied without a hearing. *See United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) (citing *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (endorsing the summary dismissal of 2255 motion where the movant's allegations are "clearly frivolous on the basis of the existing record" and the "files and records of the case show conclusively that the movant is not entitled to relief"). Further, the Court should decline to issue a certificate of appealability.

## I.      PROCEDURAL BACKGROUND

This case involved a variety of charges against members of a group that committed robbery, carjacking, kidnapping, and drug trafficking offenses. Chaney was named in the original indictment, returned on April 28, 2015, that also charged 15 other defendants. After five of those defendants entered guilty pleas, the grand jury returned a

superseding indictment against Chaney and 14 others. Following additional guilty pleas, the Court divided the matter for two trials.[1]

On January 31, 2017, a "Phase I" trial commenced for defendants Khalil Smith, Mark Woods, Terrance Munden, Robert Hartley, and Levern Jackson before the Honorable Mitchell S. Goldberg. On April 17, 2017, the jury returned guilty verdicts against all defendants. The defendants were acquitted on some charges.

The "Phase II" trial of the remaining defendants was transferred to the Honorable Wendy Beetlestone. In that trial, that commenced on September 6, 2017, Chaney was tried along with co-defendants Brandon Segers, Braheim Ballard, and Edwin Robinson. This trial also resulted in guilty and not guilty verdicts, as well as a deadlock on certain counts. Chaney was convicted of Count 22, charging kidnapping, in violation of 18 U.S.C. § 1201. He was acquitted of two carjacking charges (Counts 11 and 25), while the jury could not reach a verdict on other charges.

By letter dated November 1, 2017, the government informed the Court of its intention to proceed to sentencing on the count of conviction for Chaney and not pursue retrial on the counts on which the jury was deadlocked.

On April 24, 2018, Chaney filed a motion for a judgment of acquittal and a new trial. In his motion, Chaney challenged the sufficiency of the government's trial evidence as to his single count of conviction. He also made a claim that the jury selection process violated his Sixth Amendment rights and the Jury Selection and Service Act of 1968.

---

[1] One defendant who was charged in connection with a single incident but not charged in the conspiracy was severed, and his case was tried separately.

Chaney also claimed that government witnesses gave false testimony at trial and before the grand jury; the district court improperly limited his cross-examination of government witnesses; and there was juror misconduct such that the verdict should be nullified. Chaney's post-trial motion was denied by opinion and order dated November 29, 2018 (ECF 1579, 1580). Additional litigation from the Phase II trial concerned an allegation of inappropriate social contacts, after the trial, between Judge Beetlestone's law clerk and a case agent. The Court ultimately found no impropriety.

On June 26, 2019, the Court sentenced Hasan Chaney to 315 months' imprisonment, 5 years' supervised release, and a $100 special assessment.

On July 8, 2019, Chaney filed an appeal of his judgment of conviction and sentence. In his appeal, Chaney raised various issues contending that 1) the jury selection process violated his Sixth Amendment rights and the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 et seq.; 2) contacts between the district court's law clerk and the government's case agent during and after the trial offended his due process rights; 3) the government presented insufficient evidence of his guilt on Count 22 for kidnapping; 4) the district court abused its discretion in limiting the scope of cross-examination with respect to three of the government's cooperating witnesses; and 5) the district court committed error by applying an offense-level enhancement. On August 28, 2024, the Court of Appeals affirmed the judgment of the district court. *United States v. Segers*, 2024 WL 3963684 (3d Cir. 2024).

Chaney's underlying motion pursuant to 28 U.S.C. § 2255 was timely filed on November 17, 2025. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) (the

one-year period for a 2255 motion begins to run when the time for a direct appeal expires; here, that was 90 days after the Third Circuit's ruling, when the time to petition for certiorari expired). On March 2, 2026, this Court ordered the government to respond to Chaney's motion on or before May 4, 2026. For the reasons set forth below, Chaney's motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Overview of the Robbery/Burglary Ring.

Beginning in at least September 2012, a group of men in Philadelphia conspired to rob suspected drug dealers. The group targeted their victims based on the assumption that drug dealers would have large quantities of cash and drugs in their homes and would not call the police for fear of exposing their own criminal conduct. The group engaged in burglaries, home invasions, kidnapping, and carjacking to accomplish their goals. PSR ¶ 27.

The group was led by Khalil Smith and Mark Woods. Smith and Woods selected the targets, came up with the specific robbery or burglary plan, and selected the crew that would be involved in each incident. Smith and Woods determined which vehicles would be used, how they would gain entry into the home, and whether the group would burglarize the home, conduct a home invasion, or kidnap someone. Smith and Woods assigned the crew members to specific roles and decided the share of the profits that each participant would receive. Tasks typically included surveillance, including acting as a lookout, and direct participation in the robbery or kidnapping. PSR ¶ 28.

Prior to committing the various crimes, the conspirators primarily met at or outside a residence on the 1400 block of Lenox Street in Philadelphia to discuss the robbery plans and assign tasks. They also met there on occasion after the crime to divide the proceeds. The group also used several houses on Lenox Street to stash tools, weapons, and proceeds from the crimes. PSR ¶ 29.

The group conducted surveillance on their victims prior to committing the robberies, which included GPS tracking, and physical surveillance outside their victims' homes to learn their daily routines. They also trolled social media to learn about their victims. PSR ¶ 31. When executing the burglaries and robberies, members of the crew used tools, such as crowbars and ladders, to break into their victims' homes. They used walkie-talkies and cellular phones to communicate with each other and police scanners to monitor police activity. They also wore disguises, including wigs, glasses, gloves, makeup, police uniforms, bulletproof vests, and police badges, to avoid detection and to threaten and scare their victims. PSR ¶ 33. They also used semi-automatic firearms and a shotgun to subdue and threaten their victims. They restrained their victims with handcuffs, zipties, electrical cords, and shoelaces. Victims were abducted, beaten, tortured, and assaulted during the home invasion robberies. PSR ¶ 34. The thieves stole various items including money and drug proceeds, as well as drugs, jewelry, cars, designer bags, electronic equipment, and other items of value. PSR ¶ 35.

### B.      The March 19, 2014, Mayfair Street Kidnapping Incident.

Chaney was convicted of kidnapping, in Count 22, based on the kidnapping of Orlando Torres on March 19, 2014, in an effort to steal drugs and money from Torres. In

- 5 -

this brutal incident, Torres was kidnapped off the street and taken to a home where he was tortured. He was only released after his family paid a ransom of $50,000, that Chaney and the others divided.

The evidence at trial showed that in March 2014, Mark Woods, in the presence of Khalil Smith and Jeffrey Bellamy, informed Marcus Bowens that they were targeting Orlando Torres for a kidnapping because he was a cocaine dealer and they believed that he had a lot of drugs and money. Trial Transcript, September 26, 2017, p. 139-141. After learning where Torres lived, the men did surveillance to learn his habits and routine. *Id.* at 141. On March 19, 2014, after formulating their plan to kidnap, rob, and hold Torres for ransom, Khalil Smith, Mark Woods, Terrance Munden, Robert Hartley, Hasan Chaney, Levern Jackson, Marcus Bowens, and Jeffrey Bellamy drove to an area near Torres' home in the 700 block of Mayfair Street where they waited for him to return. Woods and Chaney sat parked in a van in front of Torres' home as the others waited in vehicles nearby. *Id.* at 141-148.

The robbers observed Torres drive onto the 700 block of Mayfair Street, park, and get out of his vehicle. The robbers got out of their vehicles and rushed toward Torres. *Id.* at 148-149. They identified themselves as police officers. Trial Transcript, September 19, 2017, p. 227-228. The robbers were dressed in dark clothing with masks covering their faces and some of them, including Chaney, were wearing police badges hanging from their necks. *Id.* at 227; Trial Transcript, September 26, 2017, p. 152. The men then assaulted and subdued Torres, handcuffed Torres' wrists, and stole cash from Torres. Woods, Jackson, and Bellamy remained inside vehicles, acting as lookouts. When the

kidnappers initially attempted to grab him, Torres began to struggle with them and attempted to run. He did not get far before the kidnappers caught and began punching him, knocking him to the ground and handcuffing him behind his back. Torres was thrown inside the van driven by Woods, where the men covered his head and face with a skull cap. *Id.* at 152-155; Trial Transcript, September 19, 2017, p. 229-232.

Inside the van Torres was repeatedly assaulted. He was driven from the area, then placed into Hartley's minivan and driven against his will to Munden's garage, where he was held captive for several hours. Trial Transcript, September 26, 2017, p. 152-156. Jackson remained at the scene of the kidnapping, Bowens and Bellamy remained outside Munden's home, and Smith, Woods, Chaney, Hartley, and Munden went inside Munden's home with Torres. *Id.* at 155-159. Inside the garage, the men forced Torres to strip naked and repeatedly assaulted and threatened him. They tortured Torres by "water boarding" him and pouring boiling water on him, continually demanding to know where they could find Torres' drugs and drug proceeds, insisting that he tell them where his cocaine was. When Torres told them that he did not have any, the beating continued with one man taking Torres' belt, wrapping it around his hand, and striking Torres in the stomach with the buckle. The men taunted Torres, "we know how you make your money, and this is how we make our money." Trial Transcript, September 19, 2017, p. 235-247.

The kidnappers used, and forced Torres to use, his cellular telephone to call his sister to arrange for the payment of ransom. *Id.* They ultimately spoke with Torres' sister and directed her to get money and drop it at a location where they retrieved it. *Id.* at 242. Once the ransom money was retrieved, the kidnappers were directed by Smith to release

Torres, at which time they removed Torres from Munden's garage and drove him to another location where he was released. Trial Transcript, September 26, 2017, p. 159-162. Torres was later taken to the hospital where he remained for two days as he underwent treatment for the injuries he sustained during this brutal incident. Trial Transcript, September 19, 2017, p. 243-247.

Smith later met with Woods, Munden, Hartley, Chaney, Jackson, Bowens, and Bellamy to divide the $50,000 in ransom money. Trial Transcript, September 26, 2017, p. 162-163.

An analysis of the available cell site records revealed that phones belonging to Smith, Bowens, Woods, and Jackson were near the site of the kidnapping on Mayfair Street at the time of the kidnapping. The records also revealed that the phones were near Munden's home on North 15th Street, after Torres was kidnapped. The cell site location data also revealed that Jackson's phone remained behind at the scene of the kidnapping after Torres was abducted. This corroborated Bowens' testimony that Jackson remained behind and reported back to the others about the police presence at Torres' home. Also, Jackson's, Smith's, and Woods' phones were all located near Wingohocking Street at the time the ransom money was retrieved. Trial Transcript, September 28, 2017, p. 76-81; *See also* Government Exhibit 31-3, p. 9-21; and Trial Transcript, October 2, 2017, p. 96-97.

In addition, call detail records revealed contact between the participants in the kidnapping of Torres. Trial Transcript, October 3, 2017, p. 112-117. *See also*, Government Exhibit 33-1, p. 25-31.

The evidence of Chaney's involvement in the Mayfair kidnapping was overwhelming to say the least. His coconspirator, Marcus Bowens, clearly explained Chaney's involvement and his role in the events of March 19, 2014. His detailed testimony was corroborated by testimony of the victim, Orlando Torres, as well as exhibits, including the video of the crime (Government Exhibit 9-3),[2] cell site location data, and call detail records. The government argued in its response to Chaney's posttrial motions for judgment of acquittal and a new trial, and in response to his appeal that all of this evidence was sufficient to support the jury's verdict. Both the district court and the Court of Appeals agreed.

## III.    APPLICABLE LAW

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected if that sentence was imposed in violation of law or constitutional right. Importantly, collateral review under Section 2255 is not a substitute for direct appeal. *See United States v. Addonizio*, 442 U.S. 178, 184 (1979). Relief under Section 2255 is reserved for errors that are constitutional, jurisdictional, or in some other respect fundamental in nature. *Id*.; *see also United States v. Timmreck*, 441 U.S. 780, 784 (1979) (Section 2255 is intended to address only "fundamental defects," such as constitutional errors that may have resulted in a "complete miscarriage of justice" or are "inconsistent with the rudimentary demands of fair procedure.").

---

[2] In support of his ineffective assistance of counsel claim, Chaney argues that his trial counsel was ineffective for failing to attempt to have the Mayfair Street kidnapping video enhanced. The government addresses this claim below. The government will provide a copy of the video (Government Exhibit 9-3) to the Court if requested.

It is the petitioner's burden to set forth adequate facts to establish that he is entitled to Section 2255 relief, and his failure to do so is fatal. *See LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014) ("the burden of proof . . . on a § 2255 petition belongs to the petitioner"); *Wilkins v. United States*, 754 F.3d 24, 28 (1st Cir. 2014) (same); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (if "claims are stated in the forms of conclusions without any allegations of fact in support thereof," a § 2255 motion is "legally insufficient"). "[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

Courts have discretion to summarily dismiss a petition "where the motion, files, and records show conclusively that the movant is not entitled to relief." *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). That is the case here.

## IV.   ARGUMENT

Chaney states in his motion:

The record reveals multiple constitutional violations:

1. The indictment was tainted by false grand-jury testimony;

2. Jury selection procedures deprived Chaney of a fair and impartial jury;

3. Perjured testimony supported the Mayfair Street kidnapping conviction;

4. The defense was denied full cross-examination of key cooperating witnesses;

5. Juror misconduct undermined the verdict; and

6. Trial counsel rendered ineffective assistance by failing to challenge a critical misidentification in the kidnapping video.

Mtn. 22.

However, he presents no details or argument at all regarding claims 3 (perjured testimony at trial), 4 (limit on cross-examination), and 5 (juror misconduct) on this list.

In fact, akin to claim 3, Chaney argued on appeal that the verdict improperly rested on false testimony of cooperating witness Bowens. The Third Circuit, like this Court, rejected this argument, stating in part: "The District Court aptly characterized any differences in Bowens's testimony between Phase I and Phase II as 'minor details,' *Ballard*, 2018 WL 6252604, at *8, which fall far short of the perjury that Chaney alleges." *Segers*, 2024 WL 3963684, at *3.

This Court and the Third Circuit also rejected Chaney's argument, apparently now repeated in claim 4, that the trial court improperly limited cross-examination. This Court did so in an extensive explanation. ECF 1579 at 18-21. The Third Circuit affirmed. *Segers*, 2024 WL 3963684, at *5 ("The District Court appropriately concluded that the Phase II Judge acted within her discretion in limiting the scope of the cross-examination of witnesses.").

As for claim 5, asserting juror misconduct, Chaney presents no details. He perhaps is referring to another claim that he unsuccessfully raised post-trial, that rested on a juror's note sent to the Court after the trial that expressed misgivings about the verdict on

Count 22. This Court held that Chaney was not entitled to relief. ECF 1579 at 21-23.

Chaney did not pursue the issue on appeal.

These unadorned claims fail for multiple reasons. Issues already litigated on appeal cannot be restated on habeas review. *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993). A claim in the district court that is not renewed on appeal has been procedurally defaulted. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504 (2003) (the "general rule" of procedural default is "that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.").[3] And vague and conclusory claims – an appellation that squarely applies to the single-sentence declarations of claims 3, 4, and 5 – should be dismissed. *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). Claims 3, 4, and 5 plainly fail.

Chaney offers an additional statement only regarding his claims 1, 2, and 6, but even here, his assertions are too bare-bones to warrant consideration, and also fail for additional reasons.

### A.      Claim One: False Testimony Before the Grand Jury.

With respect to his first claim, Chaney's only substantive statement is this:

> Bellamy's statements to the grand jury were false, contradicted by ROIs,
> recordings, physical evidence, prior statements, and material because they directly

---

[3] "[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Nowhere in his memorandum does Chaney show "some external impediment preventing" his appellate counsel from raising on appeal any claim, such as the juror conduct issue, that counsel did not pursue. Further, Chaney cannot make a showing of prejudice with regard to any of the claims that this Court has already denied.

> supplied a probable cause without which the indictment likely would not have issued. The prosecutor either knew or should have known of the falsity because prior disclosures/ROIs in the government's possession documented the contrary facts.

This assertion is entirely conclusory, offering no explanation of which statements were purportedly false and how that is established. It therefore should not be considered.

> Further, in any event, this Court already rejected this challenge, stating:

> Chaney also contends that the indictment against him must be dismissed in its entirety, because Bellamy, a cooperating witness who testified to the grand jury, subsequently changed his testimony about Chaney's involvement in an incident for which Chaney was *not* convicted – the attempted Hobbs Act robbery and carjacking at Regent Street. This argument fails for the reasons set out below.

> Bellamy testified to the grand jury that Chaney was present on the evening of the Regent Street incident. However, on September 23, 2017, the Government disclosed to Chaney's counsel that Bellamy, "if called as a witness at [the Phase II] trial, . . . [would] not testify that . . . Chaney was present at the night of the attempted robbery and carjacking," but rather would testify, "consistent with his trial testimony in the [Phase I] trial, that Chaney was involved . . . in the planning, preparation, and attempted execution of the robbery on a [previous] night." (Chaney Mot., Doc. No. 1331, at 5; Gov't Resp., Doc. No. 1514, at 32-33.)

> Ultimately, the Government elected not to call Bellamy to testify at the Phase II trial, and Chaney was not convicted of any charge in relation to the Regent Street incident. Chaney nevertheless contends that the indictment against him must be dismissed in its entirety because the grand jury "relied on false testimony." (Chaney Mot., Doc. No. 1331, at 5.) This argument is meritless.

> A court may not dismiss an indictment based on "the use of perjured testimony before a grand jury" unless the allegedly perjured testimony actually prejudiced the defendant. *United States v. Soberon*, 929 F.2d 935, 939-940 (3d Cir 1991); *see also United States v. Edwards*, No. 17-cr-42, 2018 WL 827553 (M.D. Pa. Feb. 12, 2018) (rejecting the defendant's contention that the indictment must be dismissed because a law enforcement agent made a false statement to the grand jury where there was no indication that the statement was "intentionally false" rather than "merely a mistake" and, where there was no prejudice because other evidence was presented to the grand jury as to the issue in question.

> Here, as in as in *Edwards*, there is no indication that Bellamy's testimony to the grand jury was intentionally false. And, like the defendant in *Edwards*, Chaney cannot show that Bellamy's testimony before the grand jury prejudiced him, even if it was intentionally false. Chaney was not convicted of any charge in relation to the Regent Street incident. And another cooperating witness, Bowens, testified at trial—as Bellamy did before the grand jury— that Chaney did, in fact, participate in the Regent Street attempted robbery and carjacking. While the trial jury did not conclude that Bowens' testimony was sufficient to find Chaney guilty of those charges beyond a reasonable doubt, Bowens' testimony was sufficient in itself to support the indictment. Because Chaney has neither demonstrated that Bellamy's testimony to the grand jury was perjured, nor that he was prejudiced by the testimony even if it was perjured, his motion to dismiss the indictment against him on this basis will be denied.

ECF 1579 at 24-25. Chaney did not appeal this ruling.

Thus, this first claim presents all the infirmities previously discussed: it is unduly vague; to the extent it can be discerned, it was rejected by this Court; and it is procedurally defaulted because Chaney did not pursue the claim on appeal.

### B.    Claim Two: Jury Selection.

In another entirely conclusory claim, Chaney states that the Court conducted an insufficient voir dire of jurors. His entire statement is:

> The combined effect: (1) the venire departed·from the JSSA's random selection mandate; (2) voir dire failed to reveal bias that reasonable questioning would have uncovered; and (3) implied bias concerns ( e.g., close relationships to parties/witnesses, employment with investigative agencies, prior victimization mirroring the charged conduct) went unaddressed.

Mtn. 18-19. Again, Chaney provides no explanatory details at all.

Further, Chaney previously litigated an objection to the random selection process. This Court denied the claim, in an exhaustive opinion, ECF 1579 at 25-35, and the Court of Appeals affirmed. The Court of Appeals stated:

The District Court, in a thorough and careful analysis, summarized the Phase II Judge's jury selection procedure and correctly determined that this procedure did not violate the Sixth Amendment or the JSSA.

*Segers*, 2024 WL 3963684, at *2 (referring to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 et seq.). Chaney's claim is therefore foreclosed both as impermissibly vague and conclusory, as procedurally defaulted to the extent it was not previously raised, and barred to the extent it was previously litigated and resolved.

**C.     Claim Six: Ineffective Assistance of Counsel Regarding Identification.**

Finally, Chaney contends that his trial attorney rendered constitutionally ineffective assistance of counsel. In support he claims that his trial counsel failed to exploit what he alleges was inconsistent testimony with respect to the Mayfair Street video by a government witness, and his trial counsel failed to utilize "video enhancement that could have clarified facial features, body type, height, gait, or other identifying characteristics." Mtn. 20. According to Chaney, "[s]uch enhancement could have demonstrated that the person depicted was not Chaney directly undercutting the prosecution's central identification evidence." *Id.*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to determine whether a defendant has been denied effective assistance of counsel. Under the *Strickland* standard, in order to prevail on such a claim, a petitioner must establish that: (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687; *see also United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997). Courts must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all

too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight. *Bell v. Cone*, 535 U.S. 685, 702 (2020). In other words, the burden upon the defendant to prove ineffective assistance is an extremely heavy one. *See Government of Virgin Islands v. Bradshaw*, 726 F.2d 115, 119 (3d Cir. 1984) (right to effective assistance of counsel does not guarantee an error-free or flawless performance by counsel). To meet it, the defendant must show both that counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 668. To prevail on the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Court, however, need not reach the first part of the *Strickland* test where a defendant cannot satisfy the second. See *Strickland*, 466 U.S. at 697 (ineffective assistance claim can be resolved by finding lack of prejudice without reaching adequacy of performance).

With respect to his first claim that trial counsel failed to exploit what he alleges was inconsistent testimony with respect to the Mayfair Street video by a government witness, Chaney again presents no details. He does not identify the witness or the supposedly inconsistent testimony.

Further, contrary to what he alleges, his trial counsel did in fact attempt to exploit various inconsistencies in the government witnesses' testimony and later argued to the

jury that a witness was not believable because the witness testified differently in two different trials regarding the Regent Street robbery, a robbery different from the kidnapping that Chaney was convicted of, and regarding which Chaney was not convicted. Trial Transcript, September 27, 2017, p. 3-72, 60-67, 232-235; Trial Transcript, October 10, 2017, p. 138.

In contrast, the key witness regarding the Mayfair Street robbery was Marcus Bowens, and his testimony regarding Chaney was nearly identical during both the Phase I and Phase II trials. In the Phase I trial, Bowens identified Chaney as the person in the video wearing a police badge around his neck. Trial Transcript, March 21, 2017, p. 89. In the Phase II trial, Bowens once again identified Chaney as the person in the video wearing a police badge around his neck. Trial Transcript, September 26, 2017, p. 152. There is no showing here of any ineffective assistance of counsel.

With respect to Chaney's additional claim that his trial counsel failed to utilize "video enhancement that could have clarified facial features, body type, height, gait, or other identifying characteristics," his assertion plainly fails on the prejudice prong. It is established that to satisfy the prejudice prong with a claim of this nature – that counsel failed to conduct an investigation or obtain particular evidence – a defendant must set forth the testimony which counsel, due to inadequate performance, failed to elicit or rebut. The Third Circuit explained: "Of course, the fact that counsel was ineffective is not in itself sufficient to grant relief under *Strickland*. Under *Strickland*'s second prong, [the defendant] must establish a reasonable probability – one sufficient to undermine our confidence in the outcome – that the jury's verdict would have been different if not for

- 17 -

counsel's errors. Such a showing may not be based on mere speculation about what the witnesses [the attorney] failed to locate might have said." *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (citation omitted). When evidence is presented, "we must assess this evidence in relation to the record as a whole, to determine whether there is a reasonable probability that such evidence, if presented to a jury acting 'conscientiously . . . and impartially,' would have led the jury to have a 'reasonable doubt' respecting [the defendant's] guilt." *Id.* at 713 (citations omitted), *quoting Strickland*, 466 U.S. at 695. *Accord Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (no prejudice where petitioner offered no evidence of what witness would have said). Compare *Marshall v. Hendricks*, 307 F.3d 36, 108 (3d Cir. 2002) (in state capital proceeding, evidentiary hearing was required where defendant alleged that his attorney did not investigate the availability of mitigating evidence, and in the habeas matter "offered a significant quantum of apparently relevant mitigating evidence that was never placed before the jury for consideration").

Here, Chaney simply posits that an enhancement ***could have*** clarified facial features, body type, height, gait, or other identifying characteristics, without anything more. He offers no enhanced image, no enhanced video, no expert report, nor any other declaration of a competent witness that the video was even capable of being enhanced, and what an enhancement showed. His conclusory statement is simply insufficient to meet his burden.[4]

---

[4] Further, Chaney fails to acknowledge that his trial counsel did in fact utilize video enhancement techniques in his defense, albeit with regard to a different video than

Chaney's claim of ineffective assistance of counsel fails.

## V.      A CERTIFICATE OF APPEALABILITY SHOULD NOT ISSUE

Upon the denial of a Section 2255 motion by the District Court, an appeal to the Court of Appeals by the petitioner is not permitted unless he obtains a certificate of appealability. 28 U.S.C. § 2253. The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The application for such a certificate should first be made to the District Court. Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

The Third Circuit has further instructed that "as a matter of practice . . . an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court." *United States v. Williams*, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

which Chaney now claims should have been analyzed and enhanced. Counsel engaged an expert (Justin Rosander of JMS Studios LLC) to analyze and enhance a pole camera video showing a person, identified as Chaney by Marcus Bowens, and his coconspirators meeting on Lenox Street following the Regent Street robbery. The video enhancement allowed trial counsel to plausibly argue that the enhanced image showed that the person identified in the video as Chaney was not him, thereby bringing into question the witness' testimony on this, and perhaps other aspects of his testimony. See Trial Transcript, October 10, 2017, p. 123-124.

Accordingly, in the interests of judicial economy, the government requests that in addition to denying the instant motion this Court also find that the defendant has failed to make a substantial showing of a denial of any constitutional right.

In order to present a "substantial showing of a denial of any constitutional right," in order to justify an appeal, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal. *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

To establish the required showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, the claim must be constitutional in nature; there may be no certificate of appealability for an issue which presents only a statutory or sentencing guidelines question. *United States v. Cepero*, 224 F.3d 256, 262-68 (3d Cir. 2000) (en banc). For the reasons stated above, the defendant has not made the required showing, and therefore a certificate of appealability should be denied.

## VI.    CONCLUSION

Because Chaney does not establish any cognizable claim for relief based upon a defect that is constitutional, jurisdictional, or otherwise fundamental in nature, his petition should be summarily denied. Further, pursuant to 28 U.S.C. § 2253, the Court

should decline to issue a certificate of appealability, as Chaney has not made a substantial showing of the denial of a constitutional right.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Salvatore L. Astolfi*
SALVATORE L. ASTOLFI
Assistant United States Attorney
Chief, Criminal Division

## CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the government's response in opposition to defendants' motion pursuant to 18 U.S.C. § 2255 to be served by regular mail, postage prepaid on:

Mr. Hasan Chaney
Registration No. 69662-066
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV  26525

*/s Salvatore L. Astolfi*
SALVATORE L. ASTOLFI
Assistant United States Attorney
Chief, Criminal Division

Dated:  May 4, 2026.